UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JONATHAN BLOEDOW,<br><br>                  Plaintiff-Relator,<br><br>     v.<br><br>PLANNED PARENTHOOD OF THE GREAT NORTHWEST INC,<br><br>                  Defendant. | CASE NO. C11-1192 MJP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION UNDER 12(B)(1) |

THIS MATTER comes before the Court on Defendant's Motion to Dismiss for Lack of Jurisdiction under 12(b)(1). (Dkt. No. 38, 48-1.) Having reviewed the motion, Plaintiff-Relator's amended Response (Dkt. No. 61), and Defendant's Reply (Dkt. No. 40); Defendant's Request for Judicial Notice (Dkt. No. 40), Plaintiff-Relator's Response (Dkt. No. 46), and Defendant's Reply (Dkt. No. 55); Defendant's Notice of Supplemental Authorities (Dkt. No. 63); and all related filings; and having heard oral argument on December 4, 2013; the Court hereby GRANTS Defendant's motion and DISMISSES the case for lack of subject-matter jurisdiction.

**Background**

On July 18, 2011, Plaintiff-Relator Jonathan Bloedow filed a complaint in this qui tam action (Dkt. No. 1) under seal in accordance with the False Claims Act's requirements for private citizens suing on behalf of the United States Government. See 31 U.S.C. 3730(b)(2). The Government declined to intervene and the case was unsealed on March 19, 2013. (Dkt. No. 16.)

In his complaint, Plaintiff-Relator alleges that from 2003 to 2009 Defendant Planned Parenthood of the Great Northwest fraudulently billed the Washington state agency that administers Washington's Medicaid program. (Dkt. No. 1 at 11, 14–15.) Defendant allegedly submitted claims for emergency contraceptives and oral contraceptives at its "usual and customary" rates when it was required to bill at its "actual acquisition costs" (for emergency contraceptives) or a maximum allowable fee (for oral contraceptives). (Dkt. No. 1 at ¶¶ 36–37; id. at ¶¶ 45-49.) Plaintiff-Relator also alleges Defendant falsely certified its compliance with such requirements (Dkt. No. 1 at ¶ 29), conspired to conceal its fraudulent claims (Dkt. No. 1 at ¶ 50), and improperly retained the excess reimbursements. (Dkt. No. 1 at ¶¶ 47, 49, 52, 60.)

Prior to the filing of Plaintiff-Relator's complaint, a former employee of Planned Parenthood brought a qui tam action alleging similar contraceptive overbilling practices against Planned Parenthood affiliates located throughout California. See generally United States ex rel. Gonzalez v. Planned Parenthood of Los Angeles, Case No. 2:05-cv-08818-AHM-FMO (C.D. Cal. 2005–present); id., Case No. 09-55010, 392 F. App'x. 524, 527–28 (9th Cir. 2010). The allegations in the suit attracted critical attention from Congress and the press and resulted in a report by the Office of the Inspector General for the Department of Health and Human Services about entities nationwide billing above cost for drugs (including contraceptives) under the 340B Drug Discount Program. (See Dkt. No. 39-1 at Ex. 5.)

1    Defendant now moves to dismiss Plaintiff-Relator's action, arguing the "public
2 disclosure bar" of the False Claims Act, 31 U.S.C. § 3730(e)(4)(A), deprives this Court of
3 subject-matter jurisdiction over the case. (See Dkt. No. 38.) Defendant proposes five categories
4 of prior disclosures: the Gonzalez suit, the OIG report, an internet-published report by
5 Americans United for Life, other articles published by newspapers and on the internet, and the
6 response to Plaintiff-Relator's own Washington State public records request. (Id.) As an initial
7 matter, the parties dispute whether the whistleblower-friendly 2010 amendments to the public
8 disclosure bar apply. (Dkt. No. 61 at 7–8; Dkt. No. 38 at 27–28.) See Patient Protection and
9 Affordable Care Act of 2010, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119 (2010). Plaintiff-
10 Relator contends none of the alleged disclosures triggers either version of the public disclosure
11 bar, and even if there was a disclosure, Mr. Bloedow qualifies as an original source. (Dkt. No. 61
12 at 14–26.)

13    **Discussion**

14    I.    Relevance of 2010 Amendments

15    Plaintiff-Relator asks the Court to apply the version of the public disclosure bar in effect
16 at the time the complaint was filed. (Dkt. No. 61 at 12.) Defendant argues the version in effect at
17 the time of the alleged billing violations applies. (Dkt. No. 38 at 27.) Defendant is correct. With
18 respect to earlier 1986 amendments to the same provision, the Supreme Court held that where the
19 conduct at issue preceded the effective date of the amendments, the version in effect at the time
20 the suit was commenced did not control because of the presumption against retroactivity. Hughes
21 Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 946 (1997). The presumption
22 applied in part because the 1986 amendments eliminated potential defenses to the False Claims
23 Act. Id. As Plaintiff-Relator concedes, the 2010 amendments also "eliminate defenses based on
24

disclosures from state and local government sources unless the information has also been disclosed in the news media or otherwise publicly disclosed." (Dkt No. 61 at 7.) The Hughes rationale applies here, and Plaintiff must proceed under the statute in effect at the time of Defendant's alleged false claims. While there are vague references to continuing retention of funds in Plaintiff-Relator's complaint, the central billing violations alleged by Plaintiff-Relator took place from 2003 to 2009. (Dkt. No. 1 at 11, 14–15.) Thus, the pre-2010 version of the public disclosure bar is the framework for determining this Court's subject-matter jurisdiction.

The version of the public disclosure bar that was effective until 2010 provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government [sic] Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (1986–2010).

II.     Public Disclosure Bar

Through the public disclosure bar, Congress attempted to strike a balance between "adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own." U.S. ex rel. Devlin v. California, 84 F.3d 358, 362 (9th Cir. 1996). Government knowledge of the allegations is no longer the operative fact in determining whether a qui tam action can clear the subject-matter jurisdiction hurdle, see Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1051 (9th Cir. 2012), but the public-disclosure bar nonetheless attempts to ensure that the prior disclosure provided "enough information to enable the government to pursue an investigation" into the alleged fraud. See Alcan, 197 F.3d at 1019.

1     The 9th Circuit has summarized the requirements of the public disclosure bar as a two-part test. First, the Court must determine whether there was a prior "public disclosure" of the "allegations or transactions" upon which Plaintiff-Relator's complaint is based. See United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1018 (9th Cir.1999). If the answer to the first question is in the affirmative, the Court moves on to the second step: whether Plaintiff is an "original source." See id. In assessing a factual challenge to the Court's jurisdiction under Fed. R. Civ. P. 12(b)(1), the Court may look beyond the four corners of the complaint and need not presume the truthfulness of a plaintiff's allegations. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Plaintiff-Relator bears the burden of establishing that there was no public disclosure (or that he was the original source) by a preponderance of the evidence. Alcan, 197 F.3d at 1018.

    A.  Public Disclosure

    Potential prior public disclosures must take place in one of the statute's enumerated sources. United States ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1199 (9th Cir. 2009) (citation omitted). For an allegation to be "based on" the public disclosure, the allegation must be "substantially similar" to the disclosure, not identical to it or literally derived from it. See id.

    1.  Gonzalez

    The first candidate for a prior public disclosure is the Gonzalez lawsuit, which triggered many of the other investigations, reports, and articles pointed to by Defendant as potential public disclosures. The Gonzalez suit qualifies as a "civil [ . . . ] hearing" under 31 U.S.C. § 3730(e)(4)(A). See Meyer, 565 F.3d at 1199. The Court can take judicial notice of the public

filings in the suit. Reyn's Pasta Bella, LLC, v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

The allegations in the Gonzalez suit bear an obvious resemblance to the allegations in this suit. Both actions allege one or more Planned Parenthood affiliates overbilled state Medicaid agencies for contraceptives by—to put it in layman's terms—buying pills wholesale and billing the government retail, in violation of applicable regulations. The Gonzalez suit also suggested—but never formally alleged—that other Planned Parenthood affiliates might be engaging in the same practices: "These Nine [California] affiliates are part of a nationwide organization consisting of 103 affiliates forming the Planned Parenthood Federation of America. The estimated illegal billing of the defendants over six years, beginning in approx. 1997, exceeds $180,000,000.00. This conservative figure only takes into account the illegal and unscrupulous billing practices of Defendants within the state of California." (Compl., Gonzalez Dkt. No. 31 at 21.)

There are also certain differences between the two sets of allegations. Since the Medicaid reimbursement programs are administered by the states, California and Washington State Planned Parenthood affiliates operate under different though parallel sets of regulations. And of course, the suits name distinct defendants: various California Planned Parenthood affiliates in Gonzalez and Planned Parenthood of the Great Northwest in this case.

Under Ninth Circuit case law and the record in this case, however, these distinctions are not conclusive. The applicable regulations in both cases are by their nature publicly disclosed, so they cannot distinguish this case's allegations from the public disclosures in Gonzalez. The practical significance of the most obvious distinction—different defendants—is somewhat uncertain. Although Plaintiff-Relator notes that each Planned Parenthood affiliate is legally

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS FOR LACK OF JURISDICTION
UNDER 12(B)(1)- 6

1   independent, the record lacks any evidence as to whether affiliates of Planned Parenthood in
2   different states engage in the same or different billing practices. (See Dkt. No. 61 at 14.)
3       Ninth Circuit cases demonstrate that it is not always necessary for the public disclosure
4   to name the exact defendant, as long as the defendant's identity can be inferred. For example, in
5   Alcan, the prior disclosure named a "narrow class of suspected wrongdoers"—the federal
6   contractors that had employed members of a single union local over the past four years, the
7   identities of which were traceable through payrolls the contractors were required to file with the
8   government—so a qui tam suit against any one of those contractors was barred. Alcan, 197 F.3d
9   at 1019. The Ninth Circuit also commented approvingly on the application of the jurisdictional
10  bar in United States ex rel. Fine v. Sandia Corp., where prior disclosures discussing a class of
11  nine national laboratories and specifically identifying two of them barred a suit against a third
12  national laboratory. 70 F.3d 568, 569–71 (10th Cir. 1995).
13      Defendant Planned Parenthood of the Great Northwest is, like the national laboratories in
14  Sandia, a sister organization to the several similarly affiliated defendants in Gonzalez. Since the
15  standard for being "based on" a prior disclosure is mere "substantial similarity," the Gonzalez
16  allegations, at minimum, come close to triggering the jurisdictional bar, especially since the
17  burden is on Plaintiff-Relator to establish jurisdiction. The only thing that may be missing from
18  the Gonzalez suit in comparison with Sandia is an umbrella statement or implication that Planned
19  Parenthood affiliates nationwide engaged in similar billing practices. That aspect of the
20  disclosure, however, is adequately supplied by another enumerated source.
21      2.  OIG Report
22      Reports of the Office of Inspector General (OIG) qualify as "administrative [ . . .]
23  report[s]" under 31 U.S.C. § 3730(e)(4)(A). The Court can take judicial notice of administrative
24

1 | reports. See United States v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943,
2 | 955 (9th Cir. 2008).

3 | The introduction to the June 2011 report, State Medicaid Policies and Oversight
4 | Activities Related to 340B-Purchased Drugs, indicates that the report was directly inspired by the
5 | allegations in Gonzalez about California Planned Parenthood affiliates overbilling for
6 | contraceptives: "A 2005 Federal qui tam lawsuit alleged that some 340B-covered entities
7 | overcharged a State Medicaid agency for covered outpatient drugs. Partly in response to this
8 | lawsuit, Senator Charles Grassley requested that the Office of Inspector General (OIG) describe
9 | Medicaid reimbursement practices related to the 340B Program." (Dkt. No. 39-1 at 93.) The
10 | report describes a common though presumably not universal practice in which entities including
11 | "family planning clinics" bill state Medicaid agencies at above actual acquisition costs: ""States
12 | reimburse 340B-purchased drugs at the amounts that covered entities bill—which may be above
13 | 340B prices even if States have a policy of reimbursing covered entities at 340B prices." (Id. at
14 | 93, 103.) The focus of the report is on prospective prevention (increasing the clarity of state
15 | regulations) rather than rooting out past wrongdoers, but the report clearly assumes that many
16 | entities across the nation were engaged in the same sort of billing practices alleged by Plaintiff-
17 | Relator.

18 | Standing alone, the OIG Report might not clear the public disclosure hurdle. The level of
19 | specificity needed to decide that an industry-wide disclosure triggers the jurisdictional bar is still
20 | being worked out among the circuit courts of appeal. Cf. Cooper v. Blue Cross and Blue Shield
21 | of Florida, Inc., 19 F.3d 562, 566 (11th Cir. 1994) (holding that "allegations of widespread
22 | [Medicare Secondary Payer] fraud made in sources in which [the defendant] was not specifically
23 | named or otherwise directly identified are insufficient to trigger the jurisdictional bar"); United
24 |

States ex rel. Findley v. FPC-Boron Employees' Club, 105 F.3d 675, 687 (D.C. Cir. 1997) (holding that the bar was triggered as to a specific agency's federal employee's group where there had been several public disclosures about the generic practice and "questionable legality" of federal employee groups retaining revenue from vending machines on federal property), overruled on other grounds by United States ex rel. Davis v. District of Columbia, 679 F.3d 832, 838–39 (D.C. Cir. 2012); In re Natural Gas Royalties, 562 F.3d 1032, 1039 (10th Cir. 2009) (holding that where the prior disclosure "named a significant percentage of industry participants as wrongdoers and indicated that others in the industry were very likely engaged in the same practices," the bar was triggered); United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc., 436 F.3d 726, 729 (7th Cir. 2006) ("Industry-wide public disclosures bar qui tam actions against any defendant who is directly identifiable from the public disclosures."); United States ex rel. Baltazar v. Warden, 635 F.3d 866, 869 (7th Cir. 2011) (distinguishing Gear and holding that "a report identifying a uniform practice activates § 3730(a)(4)(A) does not imply anything about the effect of a report disclosing that some but not all firms use a practice"). But the OIG Report does not merely acknowledge the likelihood that some percentage of the nation's family planning clinics is engaged in this billing practice. It also explicitly announces its connection to Gonzalez, a suit concerning multiple affiliates of a particular family planning organization. The implication that other Planned Parenthood affiliates might well be engaging in the same practice is inescapable.

      Combined with the allegations and references to other Planned Parenthood affiliates across the nation in Gonzalez itself, a report indicating to the public the government's awareness of the same type of billing practices among family planning clinics generally suffices to establish prior public disclosures of the allegations under 31 U.S.C. § 3730(e)(4)(A).

3. News Media and Public Records Act

Because the previous two categories of public disclosures constitute public disclosures of the allegations at issue here, the Court will refrain from consideration of the news media reports, which are generally based on the same sources and allegations already discussed, and Mr. Bloedow's public records act request, whose contents and the state's written response, if any, are not precisely described.

B. Original Source

Once prior public disclosures have been established, the Court must determine whether Mr. Bloedow qualifies as "an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The statute clarifies that original source means in part "an individual who has direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(A) (1986–2009). Under 9th Circuit precedent, it is clear that Mr. Bloedow does not have such knowledge. Mr. Bloedow's investigation consisted of communicating with an employee of Planned Parenthood, communicating with Washington State officials, and filing a public records act request. (See Dkt. No. 61 at 35.) The holding in Devlin is unambiguous: Learning about allegations by communicating with an employee of the defendant does not constitute "direct and independent knowledge." 84 F.3d at 361. Similarly, public records act requests do not give rise to "direct and independent knowledge." See U.S. ex rel. Cohen v. City of Palmer, Alaska, No. 3:11-CV-00199-SLG, 2013 WL 4510772, *8 (D. Alaska, Aug. 26, 2013). To claim the mantle of original source, relators must "see the fraud with their own eyes or obtain their knowledge of it through their own labor unmediated by anything else." Devlin, 84 F.3d at 361. Mr. Bloedow may have used his own labor to confirm information he already suspected on the basis of Gonzalez and other sources, but that labor was not unmediated by other people and

he did not see the alleged fraud with his own eyes. As an outsider to Planned Parenthood's operations, it is clear that Mr. Bloedow is far from the kind of classic whistleblower the statute envisions. Under 9th Circuit precedent, it is clear he cannot qualify as an original source either.

### Conclusion

Because the allegations in Plaintiff-Relator's False Claims Act suit have been previously publicly disclosed and because Mr. Bloedow does not qualify as an original source, this Court lacks jurisdiction to hear the case. Defendant's Motion to Dismiss is therefore GRANTED and Plaintiff-Relator's complaint is DISMISSED for lack of subject-matter jurisdiction.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 16th day of December, 2013.

_Marsha J. Pechman_
Marsha J. Pechman
Chief United States District Judge